UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CHARLES CAPDEVIELLE,**

    **Plaintiff,**

v.                                       Case No. 8:11-cv-477-T-35TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits and Supplemental Security Income payments. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

Plaintiff was forty-nine years of age at the time of his administrative hearing in November 2009. He stands 6 feet 4 inches tall and weighed 195 pounds according to his administrative filings. Plaintiff has a GED. His past relevant work was as a cook at the dog track and as a driver and pizza maker for a restaurant. Plaintiff applied for disability benefits and Supplemental Security Income (SSI) in December 2007, alleging disability as of December 6, 2006, by reason of bipolar disorder, anxiety disorder, a separated shoulder, major

depression, bulging discs, and arthritis. Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). The Plaintiff was represented at the hearing by counsel and testified in his own behalf. Additionally, a vocational expert was called by the ALJ. In essence, Plaintiff claims he cannot work because of problems with his neck and left shoulder and because of his mental state. His shoulder is in constant pain and he has problems with the repetitive use of his left arm and hand. He is right-handed. He describes his neck pain as a separate problem. It feels stiff with pain. He gets relief by lying down. His orthopedic doctor gave him cortisone injections and recommended physical therapy. His medications make him drowsy and lethargic. By his account, his pain would interfere with work and his thought process.

He also suffers from bipolar disorder, depression, and anxiety. He is fearful of the unknown, and of people. His depression leaves him isolated. He has a hard time interacting with people in the work setting but thinks he does better with the public. He cannot focus or concentrate and he obsesses over things. He has committed himself into the hospital previously when he felt suicidal and unstable. His use of marijuana and alcohol ended by May 2006 and he denied ever using cocaine.

At the time of the hearing, Plaintiff was homeless and living in a tent city. When he had a home, he described his daily activities as going to the library and using the computer or reading or going to the beach. The rest of the time he stayed in his apartment. He cooked,

2

cleaned, did laundry and grocery shopping. He has problems sleeping due to his pain and racing thoughts.

Plaintiff testified that he can sit for about an hour or stand for about a half hour before his shoulder and neck bother him. He can walk only about eight blocks before his shoulder and neck pain sets in. He is limited to lifting twenty pounds, and any more weight than that causes him pain in his shoulder.

On questioning by the ALJ, he confirmed a number of statements he made to two consultative examiners concerning his level of activity and functional capacity. (R. 34-52).

The ALJ next called Theresa Manning, a vocational expert (VE), to testify. The VE classified Plaintiff's past work as a cook as light, semi-skilled, with a SVP of 3, and the delivery position as light, unskilled, with a SVP of 2. Next, the VE testified upon a hypothetical assuming an individual of Plaintiff's age, education, and work experience, who can perform a restricted range of light activity, restricted exertionally by no over-the-head reaching with the left arm, moderate socialization deficit, no stringent production goals or time charting, and vocationally low stress. Upon this hypothetical, the VE opined that the individual could not perform Plaintiff's past relevant work. However, the VE identified other jobs in the local and national economy that such hypothetical individual could perform, including retail marker, garment sorter, and laundry folder.

If such individual was unable to get along with his co-workers seventy percent of the time, the VE testified there would be no work available. With the added restriction to the first

hypothetical that such individual could only do occasional bilateral movement, fine or gross manipulation, the VE opined there would be no available jobs. (R. 39, 53-55).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein in detail.

By his decision of December 10, 2009, the ALJ determined that while Plaintiff has severe impairments related to left shoulder/back pain, depression, and a history of polysubstance abuse, he nonetheless had the residual functional capacity to perform light exertional work with the restrictions of no overhead reaching with his left, non-dominant arm, and no stringent production goals or time targets. Upon this finding and the testimony of the VE, the ALJ concluded that while Plaintiff could not perform his past work, he could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 18-26). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are

4

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises a single claim on this appeal. As stated by the Plaintiff, "[t]he ALJ did not have good cause to reject the opinion of Dr. Gleason." (Doc. 17 at 12).[1] Specifically, he notes that Dr. Gleason, who treated Plaintiff for his mental condition, opined in November 2009 that Plaintiff would have three or more episodes of deterioration in one year, each for an extended period when he would be unable to work. With such limitations, the Plaintiff was presumably disabled. By his argument, the reasons stated by the ALJ for discounting the opinion are incorrect or unsupported by the evidence. (Doc. 17).

In response, the Commissioner notes that the assessment by Dr. Gleason did not confirm a number of Plaintiff's claims concerning his depression and anxiety and he offered no clinical findings to support any symptoms. Also, he was unable to say whether Plaintiff was a malingerer. More to the point, while the doctor checked a box for repeated episodes of deterioration or decompensation in work or work-like settings, he otherwise found Plaintiff suffered no restrictions of activities of daily living and only moderate limitation in

---

[1]The opinion at issue is set forth in a psychiatric assessment by this doctor. In his brief, Plaintiff asserts that he has both physical and psychological impairments, but concedes that his physical impairments do not in and of themselves render him disabled. (Doc. 17 at 13). Suffice it to say that my review of the medical evidence, including Plaintiff's statements therein, supports that concession.

6

maintaining social functioning, and the doctor was unable to assess the deficiencies of concentration, persistence or pace. And, to the extent that these findings are an opinion that Plaintiff could not hold a job, they were properly discounted because they were based on Plaintiff's subjective report and because the doctor did not have a significant period to evaluate him. His treatment notes did not support the opinion either. After an initial psychiatric evaluation in March 2009, Plaintiff failed to show up for medication management appointments. In September 2009, Dr. Gleason noted that he was unable to evaluate the effectiveness of Plaintiff's medications because Plaintiff had failed to sign up for a program for the same. At that time, he assessed Plaintiff with a GAF of 57, reflecting only moderate symptoms. Furthermore, other evidence of record supported the ALJ's conclusion that Plaintiff did not suffer a totally disabling mental condition. Thus records from Suncoast Community Health in 2008 (R. 372-90) reflected that his condition was improved with treatment. Dr. Melissa Trimmer, Psy.D., a consulting examiner made numerous findings suggesting Plaintiff's capacity for work and noted statements by Plaintiff suggesting a relatively high level of daily activity. (R. 331-34). Similarly, the findings by the state agency consultants supported the ALJ's decision to discount any indication by Dr. Gleason that Plaintiff could not work. (R. 307-09, 355-57).

When considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the

7

medical impairments. *Lewis*, 125 F.3d at 1440. Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The opinion evidence at issue is set forth in a November 2009, psychiatric impairment questionnaire by Dr. Joel Gleason, M.D. (R. 645-47). According to that questionnaire, Dr. Gleason first saw Plaintiff in March 2009 and at three-month intervals thereafter for medication checks. His diagnosis was bipolar type II, polysubstance dependence in remission, and antisocial personality disorder traits. Plaintiff's symptoms included sleep disturbance, personality change, mood disturbance, emotional liability, substance dependence, and hostility and irritability. (R. 645). Functionally, Dr. Gleason found no restrictions in activities of daily living, and moderate limitations in maintaining social functioning. (R. 647). The doctor was unable to assess deficiencies in concentration, persistence or pace. He did check the box for "Repeated (3 or more)" episodes of deterioration or decompensation in work or work like settings. *Id.* The doctor indicated that he did not know whether Plaintiff was a malingerer or whether his impairments would cause him to be absent from work. Finally, he reported that Plaintiff indicated that he had had difficulty maintaining a job because he has trouble getting along with people. (R. 646).

Plaintiff urges that the opinion on repeated decompensation in the workplace or in work-like settings presumably renders him disabled and that the basis of his disability is not a continual uninterrupted impairment but episodes of deterioration. By his argument, there is

8

record evidence to support these episodes, citing records from February 2007 (R. 622), December 2008 (R. 383-84), and July 2009 (R. 525-26). He urges that the reasons given by the ALJ for discounting this opinion by Dr. Gleason are not good cause. I cannot agree.

As the decision reflects, after recounting Dr. Gleason's assessment, the ALJ determined to give it little weight. Thus, after summarizing the doctor's findings, the ALJ stated,

> The Administrative Law Judge does not give any significant weight to Dr. Gleason's assessment that the claimant has repeated episodes of decompensation, each of extended duration as he has not had a significant period to evaluate him (beyond medication checks for 15 minutes every 3 months), does not know if the claimant is malingering and he states the claimant has had a fair response to treatment. In addition, he used the claimant's subjective history in reporting on why the claimant cannot keep a job. Also, Dr. Gleason gave the claimant a GAF score of 57 in September of 2009, indicating only moderate limitations according to the DSM-IV (Exhibit 15F).

(R. 23).

Initially, I cannot agree with Plaintiff that the three cited records support episodes of decompensation as such was defined on the form signed by Dr. Gleason. By that form, "an episode of deterioration must last at least two weeks. The time frame for these episodes is yearly. Thus, once or twice is one or two episodes per year. Repeated is three or more episodes per year, or an average of once every four months." (R. 647). None of the cited episodes appears to meet this criteria.[2] Beyond that consideration, as the Commissioner

---
[2]The record from February 2007 relates to a voluntary admission of Plaintiff who was experiencing suicidal thoughts. (R. 619). The whole of the records for this episode indicate Plaintiff was discharged the following day because he did not meet the criteria for mental health services, but needed a substance abuse program. (R. 589). The December 2008 record from Suncoast Center and styled a Brief Psychological Assessment, is by a licensed social

9

points out, the ALJ's comments concerning Dr. Gleason's opinion on this point are supported by the record. Dr. Gleason had not been treating Plaintiff for long and his care consisted of fifteen-minute medication management appointments at three-month intervals. As the ALJ noted, Dr. Gleason's GAF of 57 for Plaintiff suggested only moderate limitations.[3] And, as set out above, where Dr. Gleason expressed an opinion on Plaintiff's function, the limitation was relatively benign, moderate at worst, and certainly not indicative of complete disability. As the ALJ also noted, the doctor's assessment did leave open that Plaintiff might be malingering. According to the doctor, Plaintiff had had a fair response to treatment and he had a fair prognosis. Although not expressly noted by the ALJ, the assessment confusingly reports in contrast to his opinion on repeated episodes of decompensation, that the doctor was unable to specify whether the impairments would cause Plaintiff to miss work. (R. 646).

---

worker. While it does reflect a GAF of 50, the note simply indicates Plaintiff was returning for treatment which he had stopped in May 2008 ostensibly because he was in jail and for financial reasons. It does not speak to an episode of decompensation. Finally, the July 2009 record is for an admission for depression on July 7, 2009, under orders of Dr. Corzo. While Plaintiff was assessed with a GAF of 35, he was discharged two days later on Dr. Corzo's finding that he did not meet the criteria under Florida's Baker Act. (R. 526-27).

[3]GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV). A GAF of 51 to 60 means moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers), and a GAF of 41-50 indicates either serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.* A GAF of 31 to 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. *Id.*

All of this must be viewed in light of the ALJ's consideration of Dr. Gleason's treatment notes (R. 460-81). A review of those notes indicating Dr. Gleason's involvement offer little, if any, support for his opinion on repeated decompensation. *See e.g.* (R. 466-70).

Under the applicable standard, an ALJ may discount the opinions of a treating doctor on a showing of good cause. Here, I conclude that the ALJ has articulated adequate grounds for discounting Dr. Gleason's opinion on repeated decompensation and Plaintiff cannot prevail on this claim.

Finally, as pointed out by the Commissioner, other evidence of record such as Plaintiff's self-reports on his daily activities, records from other care providers, and the consultative assessment by Dr. Trimmer also support the decision to discount this opinion evidence. Plaintiff acknowledged to a number of individuals that he maintained an active daily regimen. *See e.g.* (R. 168, 198, 333, 336). Melissa Trimmer, Psy.D., conducted a psychiatric evaluation of the Plaintiff May 7, 2008. (R. 331-34). On mental status examination, his speech was intelligent and fluid, his thought processes coherent and goal directed, his attention and concentration were intact and he evidenced intact recent and remote memory skills. His cognitive functioning was in the low average range, and he had only fair insight and evidenced only fair to poor judgment. He maintained an active daily regimen. By her conclusions, Plaintiff appeared capable of understanding and following simple instructions and directions and capable of maintaining attention and concentration for tasks. He could perform most complex tasks independently and he is capable of learning new tasks. He is capable of interacting appropriately with others, at least on a superficial basis, but he has difficulty dealing with stress and he uses fair to poor judgment in decision-making. This too

supported that Plaintiff had the capacity for work. And, as noted by the Commissioner, treatment records suggested that when Plaintiff maintained his treatment regimen and took his medications, he reported doing well.

IV.

For the foregoing reasons, I find the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

> Respectfully submitted this
> 27th day of January 2012.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies to:
The Honorable Mary S. Scriven, United States District Judge
Counsel of Record